EBLEN FREED P.C.
Michelle Freed
1428 SE 20th Avenue
Portland, OR 97214
Telephone: (503) 548-6330
Facsimile: (503) 548-6332
Email: michelle@eblenfreed.com

MEYER WILSON WERNING CO., LPA
Matthew R. Wilson (*pro hac vice* to be filed)
Jared W. Connors (*pro hac vice* to be filed)
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
Email: mwilson@meyerwilson.com
        jconnors@meyerwilson.com

LEVIN LAW, P.A.
Brian Levin (*pro hac vice* to be filed)
2665 South Bayshore Drive, PH2b
Miami, FL 33133
Telephone: (305) 402-9050
Facsimile: (305) 676-4443
Email: brian@levinlawpa.com

LEVIN LAW, P.A.
Jacob Polin (*pro hac vice* to be filed)
344 20th Street
Oakland, CA 94612
Telephone: (305) 402-9050
Email: jacob@levinlawpa.com

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ANTONIO CHAIDEZ, FRANKLIN CHANG, TAJE GILL, DHAMAN GILL, and ALVYN HERNANDEZ REYES, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ADIDAS AMERICA, INC.,<br><br>　　　　　Defendant. | Case No. 3:26-cv-1511<br><br>PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES<br><br>DEMAND FOR JURY TRIAL |

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES　　　　　1

## INTRODUCTION

1.      This case seeks to prevent a billion dollar company from obtaining a windfall at its customers' expense. Last year, the Trump Administration imposed a sweeping set of tariffs pursuant to the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1701 *et seq.*, which the Supreme Court recently held were unlawful. *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628, 646 (2026). As the federal government has acknowledged and as the Court of International Trade has ordered, the government must now refund the billions of dollars it collected in connection with the IEEPA tariffs, plus interest. The problem is that importers overwhelmingly passed the cost of IEEPA tariffs on to consumers, but only the importer has standing to seek a refund in the Court of International Trade. Therefore, importers stand to gain an enormous windfall at the expense of consumers.

2.      Defendant Adidas America, Inc. is one of the largest footwear and clothing importers in the United States. Adidas responded to the IEEPA tariffs by raising prices on consumer goods to pass those costs on to its customers. Adidas is now entitled to a refund for the IEEPA tariffs, despite that its consumers actually bore those costs. Yet Adidas has made no legally binding commitment to refund customers for tariff-related overcharges. Adidas therefore stands to gain windfall profits at its customers' expense. This lawsuit seeks to prevent that unjust result.

3.      Plaintiffs Antonio Chaidez, Franklin Chang, Taje Gill, Dhaman Gill, and Alvyn Hernandez Reyes paid inflated prices for Adidas products reflecting Adidas's pass-through of the IEEPA tariffs. They bring this class action on behalf of themselves and all others similarly situated, seeking restitution and disgorgement of all tariff overcharges, prejudgment interest, and other equitable and monetary relief.

## PARTIES

4.      Plaintiff Antonio Chaidez is a natural person who resides in Berwyn, Illinois, where he intends to remain. During the Class Period, Plaintiff Chaidez purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Chaidez paid

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    2

retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Chaidez would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

5.    Plaintiff Franklin Chang is a natural person who resides in San Francisco, California, where he intends to remain. During the Class Period, Plaintiff Chang purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Chang paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Chang would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

6.    Plaintiff Taje Gill is a natural person who resides in Dana Point, California, where he intends to remain. During the Class Period, Plaintiff Gill purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Gill paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Gill would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

7.    Plaintiff Dhaman Gill is a natural person who resides in Costa Mesa, California, where he intends to remain. During the Class Period, Plaintiff Gill purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Gill paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Gill would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

8.    Plaintiff Alvyn Hernandez Reyes is a natural person who resides in Chicago, Illinois, where he intends to remain. During the Class Period, Plaintiff Hernandez Reyes purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Hernandez Reyes paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Hernandez Reyes would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                3

consumers.

9.     Defendant Adidas America, Inc. is an Oregon corporation with its principal place of business at 5055 N. Greeley Ave., Portland, OR 97217. Adidas America is a wholly owned subsidiary of Adidas AG, a German company headquartered in Herzogenaurach. Adidas America is responsible for the marketing, distribution, and sale of Adidas products in the United States. Adidas AG develops, designs, manufactures, and sells athletic footwear and apparel. A significant portion of the products Adidas sells are imported goods subject to IEEPA tariffs imposed by the United States government.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because at least one member of the proposed Class (including each Plaintiff) is a citizen of a state different from that of Defendant; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; the proposed Class consists of more than 100 class members; and none of the exceptions under the subsection apply to this action.

11.     This Court has personal jurisdiction over Defendant because its principal place of business is located in Oregon, it conducts significant business transactions in Oregon, and its wrongful conduct occurred in and emanated from Oregon.

12.     Venue is proper because Defendant's principal place of business is located in this District. *See* 28 U.S.C. § 1391(b)(1).

## FACTUAL ALLEGATIONS

**A.     The government issues IEEPA tariffs.**

13.     Beginning in February 2025, President Trump issued a series of executive orders invoking the International Emergency Economic Powers Act (IEEPA). *See* 50 U.S.C. §§ 1701(a), 1702(a)(1)(B). These executive orders imposed tariffs on goods imported from most foreign countries, including Canada, Mexico, and China.

14.     The IEEPA tariffs included tariffs of 25% on imports from Canada and Mexico

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES            4

(Exec. Orders 14193 & 14194), escalating tariffs on imports from China reaching as high as 145% (Exec. Orders 14195, 14228, 14259, and 14266), and a baseline 10% tariff on nearly all other imports under the "reciprocal tariff" order of April 2, 2025 (Exec. Order 14257), with higher country-specific rates ranging from 11% to 50% on 57 countries.

15.     President Trump also eliminated the so-called de minimis exemption, under which goods imported into the United States with an aggregate fair retail value of $800 or less were exempt from duties and taxes. *See* 19 U.S.C. § 1321(a)(2)(C). The de minimis exemption had previously allowed individual consumers to import low-value goods, such as personal purchases, gifts, and small commercial orders, without incurring any customs charges. But on April 2, 2025, President Trump issued Executive Order 14256, eliminating the de minimis exemptions for goods originating from China and Hong Kong effective May 2, 2025. On July 30, 2025, the President issued Executive Order 14324, suspending de minimis treatment for goods originating from all countries, effective August 29, 2025. From then on, all imported goods—regardless of value, country of origin, or mode of transportation—became subject to all applicable duties, taxes, and fees.

**B.     Adidas passes the cost of the IEEPA tariffs on to its customers through tariff overcharges.**

16.     Adidas is one of the largest suppliers of footwear and apparel in the United States.

17.     Adidas sells its products nationwide, both through e-commerce and brick-and-mortar stores. Although Adidas's global headquarters is Germany, the North American market is managed from its Portland office, which is also the site of a regional "creation center" that develops products tailored to needs. *See* Adidas Annual Report at 64–66 (2025), https://report.adidas-group.com/2025/en/_assets/downloads/annual-report-adidas-ar25.pdf.

18.     Most, if not all, of Adidas's products are imported from factories in countries subject to the IEEPA tariffs. According to Adidas's most recent Annual Report, 92% of Adidas's products are sourced through manufacturers located in Asia, with 27% being sourced from Vietnam, 18% from Indonesia, and 16% from China. *Id.* at 66–68.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    5

19.     While the IEEPA tariffs were in effect, Adidas imported its products to the United States from countries subject to the IEEPA tariffs prior to selling them to American consumers and therefore incurred customs charges.

20.     As a result, the IEEPA tariffs directly increased Adidas's cost of importing merchandise into the United States. Indeed

21.     But Adidas did not bear the cost of the IEEPA tariffs itself; rather, it shifted the tax burden to its customers by raising prices in direct response to the IEEPA tariffs.

22.     Indeed, Adidas signed a letter from the Footwear Distributors & Retailers of America ("FDRA") to the President of the United States stating that the tariffs would lead to "significant price increases" and have "a major impact at the cash register for every family." FDRA Letter to President Trump at 1 (Apr. 29, 2025), https://fdra.org/wp-content/uploads/2025/04/April-29-Footwear-POTUS-Letter.pdf.

23.     Adidas further stated that "[h]igher tariffs will eventually cause higher costs for all our products for the US market." Jenni Reid, *Adidas warns tariffs will lead to higher costs on its U.S. products*, CNBC (Apr. 29, 2025), https://www.cnbc.com/2025/04/29/adidas-warns-it-will-raise-prices-on-all-us-products-due-to-tariffs.html.

24.     After the IEEPA tariffs went into effect, Adidas CEO Bjorn Gulden announced that the "tariffs will directly increase the cost of [Adidas] products for the US with up to €200 million during the rest of the year." Adidas Press Release at 2 (July 30, 2025), https://res.cloudinary.com/confirmed-web/image/upload/v1753852841/adidas-group/investors/financial-publications/2025/Q2/adidasAG_Q2_2025_Results_EN_Final_pa2trd.pdf.

25.     Adidas then raised its prices on consumer goods in order to pass on the costs of the IEEPA tariffs to its customers. *See, e.g.*, Nora Redmond, *Get ready to pay more for your Adidas haul*, BUSINESS INSIDER (July 30, 2025), https://www.businessinsider.com/tariffs-price-rises-adidas-earnings-results-2025-7; Rachel Clun, *Adidas to raise prices as US tariffs costs rise by €200m*, BBC (July 30, 2025), https://www.bbc.com/news/articles/cjey0zv1pkqo.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    6

26.    Indeed, Mr. Gulden acknowledged during Adidas's Q3 2025 earnings call that it had raised prices on its more expensive items—such as the Samba sneaker, which was priced at $100, up from $90—and that the "consumer reaction" to those "price points was okay," but that it was "too early to say." Linda Pasquini & Helen Reid, *Adidas North America sales hit by weak dollar, CEO says tariff impact still unclear*, YAHOO FINANCE (Oct. 29, 2025), https://finance.yahoo.com/news/adidas-north-america-sales-hit-122459248.html.

27.    Thus, Adidas publicly acknowledged that the IEEPA tariffs were increasing its importation costs and then raised prices in direct response to those increased costs. Therefore, Adidas has passed on the costs of the IEEPA tariffs to consumers through price increases.

28.    Moreover, it is well-established that tariffs are economically borne by consumers. *See* Daniel C.K Chow & Ian M. Sheldon, *Understanding the Economic and Political Effects of Trump's China Tariffs*, 12 WM. & MARY BUS. L. REV. 273, 276 (2021) (noting the "orthodox economic theory, widely accepted by economists and trade lawyers alike, which holds that the consumers of the country imposing the tariffs—the United States—bear the brunt of the tariffs"). Empirical evidence demonstrates that the same was true of the IEEPA tariffs. *See* Robert Minton, et al., *Detecting Tariff Effects on Consumer Prices in Real Time – Part II*, BD. OF GOVS. OF FED. RESERVE (Apr. 8, 2026), https://www.federalreserve.gov/econres/notes/feds-notes/detecting-tariff-effects-on-consumer-prices-in-real-time-part-II-20260408.html; *Tracking the Economic Effects of Tariffs*, YALE BUDGET LAB (Apr. 1, 2026), https://budgetlab.yale.edu/research/tracking-economic-effects-tariffs. Adidas followed this same pattern in connection with the IEEPA tariffs.

29.    As a result, consumers who purchased goods from Adidas during the tariff period paid elevated prices reflecting Adidas's decision to pass-on the cost of the IEEPA tariffs to its retail customers.

**C.    The Supreme Court declares that the IEEPA tariffs were unlawful, prompting Adidas to seek a refund.**

30.    On February 20, 2026, the Supreme Court held "that IEEPA does not authorize

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    7

the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628, 646 (2026). Therefore, all tariffs imposed pursuant to IEEPA are void.

31.     Importers like Adidas who paid IEEPA tariffs are now entitled to a refund plus interest through a process known as liquidation. *See* 19 U.S.C. § 1504(b). Indeed, the federal government admitted as much in its Motion for a Stay Pending Appeal filed in the Federal Circuit. *See* Mot. for Stay Pending Appeal, *V.O.S. Selections, Inc. v. Trump*, No. 25-1812, ECF No. 6 at 28 (Fed. Cir. May 29, 2025) ("If tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues.").

32.     Consequently, the Court of International Trade has held that "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision." *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 Ct. Intl. Trade LEXIS 32, *1 (Ct. Int'l Trade Mar. 5, 2026). In order to avoid "deny[ing] entirely importers who have not filed suit the benefit of the *Learning Resources* decision," the court has ordered CPB to liquidate all entries covered by *Learning Resources* "without regard to the IEEPA duties." *Id.* at *3. "It is estimated that U.S. Customs and Border Protection ('Customs') has collected approximately $165 billion in duties pursuant to the International Emergency Economic Powers Act ('IEEPA'). These duties must now be refunded with interest, and the clock is ticking. Further interest is accumulating every day, with approximately $650 million accruing per month." *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 Ct. Intl. Trade LEXIS 36, *1 (Ct. Int'l Trade Mar. 6, 2026).

33.     Indeed, the federal government has already begun issuing refunds to importers. *See* Tony Romm, *Tariff Refunds Begin to Reach Businesses as Trump Lashes Out at Court*, N.Y. TIMES (May 13, 2026), https://www.nytimes.com/2026/05/13/business/economy/tariff-refunds-trump.html.  This confirms that the tariff refunds are not speculative or hypothetical, but rather are imminent, substantial, and already in the process of being distributed to importers.

34.     As Justice Kavanaugh anticipated in his dissent, however, the refund process

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                8

raises the possibility of a windfall recovery for importers: "The United States may be required to refund billions of dollars to importers who paid the IEEPA tariffs, even though some importers may have already passed on costs to consumers or others." *Learning Resources*, 146 S. Ct. at 691 (Kavanaugh, J., dissenting).

35.     Adidas has already passed on the costs of the IEEPA tariffs to consumers by raising its retail prices, yet it is entitled to a refund for those same charges plus interest.

36.     Soon after *Learning Resources* was decided, Adidas sued the federal government in the Court of International Trade, seeking a tariff refund along with equitable relief. *See* Compl., *Adidas Am., Inc. v. United States*, No. 1:26-cv-2031, ECF No. 2 (Mar. 16, 2026).

37.     Indeed, Adidas CEO Bjorn Gulden has asserted that the company is entitled to a $300 million tariff refund. *Adidas is entitled to refund of $300 mln from US tariffs, CEO says*, REUTERS (May 7, 2026), https://www.reuters.com/business/adidas-is-entitled-refund-300-mln-euros-us-tariffs-ceo-says-2026-05-07/.

38.     Nevertheless, Adidas has not made any legally binding commitment to provide any sort of refund to consumers.

39.     Accordingly, Adidas's retention of tariff-related overcharges—while simultaneously being owed refunds of those same tariffs—creates a concrete and immediate risk of double recovery that this Court can and should address.

## CLASS ACTION ALLEGATIONS

40.     *Class Definitions.* Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs seek certification of a Nationwide Class defined as follows:

> All persons in the United States who purchased goods from Adidas during the Class Period on which Adidas raised prices in response to the IEEPA tariffs.

41.     Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs also seek certification of the following California Subclass:

> All persons in California who purchased goods from Adidas during the Class Period on which Adidas raised prices in response to the IEEPA tariffs.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    9

42.     Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs also seek certification of the following Illinois Subclass:

> All persons in Illinois who purchased goods from Adidas during the Class Period on which Adidas raised prices in response to the IEEPA tariffs.

43.     The "Class Period" is the period during which Defendant assessed tariff related overcharges to consumers. The precise contours of the Class Period can only be determined through discovery. In no event shall the Class Period be less than the period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgment or preliminary approval of a settlement.

44.     Excluded from the Class and Subclasses are: (a) Defendant and its employees, officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; (b) class counsel and their employees; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case.

45.     Plaintiffs reserve the right to modify or amend the definition of the proposed class, Class Period, and proposed subclasses before the Court determines whether certification is appropriate and as the parties engage in discovery.

46.     *Ascertainability.* Defendant's sales records identify the customers who purchased items on which Defendant raised its prices in response to the IEEPA tariffs during the relevant time period. These records will identify the members of the Nationwide Class and Subclasses.

47.     *Numerosity.* While the IEEPA tariffs were in effect, Defendant processed thousands of orders on behalf of thousands of customers, who are geographically dispersed throughout the United States. On information and belief, almost all of those orders included a tariff overcharge. Therefore, the members of the proposed Class and Subclasses are so numerous that individual joinder is impracticable.

48.     *Commonality and Predominance.* This case presents questions of law and fact common to all class members, and those common questions predominate over any individualized

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    10

issues. These common questions include:

a.  Whether Defendant is entitled to retain tariff overcharges for which Defendant may claim a refund;

b.  Whether Defendant's retention of tariff overcharges constitutes unjust enrichment;

c.  Whether Defendant's retention of tariff overcharges constitutes an unfair business practice;

d.  Whether the proper remedy for Defendant's retention of tariff overcharges is restitution, disgorgement, or another equitable remedy; and

e.  Whether an award of restitution or disgorgement for the retention of tariff overcharges must include the value of any interest refunded by the federal government.

49.  *Typicality.* Plaintiffs' claims are typical of the proposed Class and Subclasses. Like all class members, Plaintiffs paid a tariff overcharge to Defendant in connection with the IEEPA tariffs. There are no unique defenses applicable to Plaintiffs.

50.  *Adequacy.* Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses. Plaintiffs are aware of their fiduciary duties to absent class members and are determined to faithfully discharge their responsibilities. Plaintiffs' interests are aligned with (and not antagonistic to) the interests of the Class and Subclasses. In addition, Plaintiffs have retained competent counsel with considerable experience in class actions and other complex litigation. Plaintiffs' counsel has done substantial work in identifying and investigating potential claims in this action, have considerable knowledge of the applicable law, and will devote the time and financial resources necessary to vigorously prosecute this action. They do not have any interests adverse to the Class or Subclasses.

51.  *Superiority and Manageability.* A class action is superior to individual adjudications because joinder of all class members is impracticable, would create a risk of inconsistent or varying adjudications, and would impose an enormous burden on the judicial system. The amount-in-controversy for each individual class member is likely relatively small, which reinforces the superiority of representative litigation. As such, a class action presents far

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES          11

fewer management difficulties than individual adjudications, preserves the resources of the parties and the judiciary, and protects the rights of each class member.

52.    *Declaratory and Injunctive Relief.* Defendant has acted or refused to act on grounds that apply generally to the Class and Subclass—namely, by uniformly collecting tariff overcharges from them. The final injunctive relief or corresponding declaratory relief will be appropriate respecting the Class and Subclasses as a whole.

## CAUSES OF ACTION

### Count 1: Declaratory Relief (28 U.S.C. § 2201)

### (On Behalf of Plaintiffs, the Nationwide Class, and All Subclasses)

53.    Plaintiff realleges all previous paragraphs as if fully set forth below.

54.    An actual, justiciable controversy exists between Plaintiffs and Defendant regarding the rights and obligations of the parties with respect to the tariff surcharges Defendant collected from Plaintiffs and the class members. This controversy is not hypothetical or abstract: Defendant is entitled to recover the duty funds at issue from the federal government, the Supreme Court has declared the underlying tariffs unlawful, and Defendant has not refunded the tariff surcharges to Plaintiff or the class members.

55.    Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

    a.    The tariff overcharges collected by Defendant from Plaintiffs and the class members were collected pursuant to tariffs that were never lawfully authorized and that Defendant has no legal right to retain;

    b.    Defendant is obligated to return to Plaintiffs and the class members all tariff overcharges collected from them, together with interest; and

    c.    Defendant is obligated to provide a full accounting of all tariff overcharges it collected from proposed Class members during the class period.

56.    Declaratory relief is necessary and appropriate because Defendant collected tariff surcharges in connection with tariffs that the Supreme Court has declared were never lawfully

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                12

authorized, Defendant has not returned those sums to the consumers who paid them, and Defendant is eligible to recover from the government the very funds that consumers provided to Defendants. Without judicial intervention, Plaintiff and the Class have no assurance that Defendants will return the unlawfully collected sums

57.     Class members have no adequate remedy at law. Because Defendant served as the importer of record, only Defendant has standing to seek a refund from CBP. Individual consumers cannot file suit in the Court of International Trade to recover duties they paid through Defendant. Without the declaratory relief sought in this action, class members will be left without any mechanism to recover the unlawful tariffs they were forced to pay.

## Count 2: Unjust Enrichment

### (On Behalf of All Plaintiffs, the Nationwide Class, and All Subclasses)

58.     Plaintiffs and the class members incorporate the above allegations as if fully set forth herein.

59.     Plaintiffs and the class members lack an adequate remedy at law, particularly as to forthcoming refunds from the federal government to Defendant.

60.     Plaintiffs and the class members conferred a financial benefit on Defendant by paying it tariff surcharges.

61.     Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiffs and the class members, as it requested that Plaintiffs and the class members pay the tariff overcharges.

62.     Under principles of equity and good conscience, Defendant should not be permitted to retain the tariff surcharges, which Defendant has unjustly obtained as a result of its price increases on goods subject to unlawful tariffs. As it stands, Defendant has retained profits generated from its sales of products subject to tariff-related price increases and should not be permitted to retain those ill-gotten profits when it is seeking a refund of the duties it paid.

63.     Plaintiffs and the class members are entitled to restitution or disgorgement of all tariff surcharges they paid to Defendant, plus prejudgment interest.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                13

## Count 3: Money Had and Received

### (On Behalf of All Plaintiffs, the Nationwide Class, and All Subclasses)

64.     Plaintiffs and class members incorporate the above allegations as if fully set forth herein.

65.     Plaintiffs and the class members lack an adequate remedy at law, particularly as to forthcoming refunds from the federal government to Defendant.

66.     Defendant received money from Plaintiffs and the class members in the form of tariff surcharges that Defendant billed and collected from them. The Supreme Court has held that those tariffs were unlawful.

67.     The money Defendant received belonged to Plaintiffs and to each member of the Class.

68.     Defendant has not returned the money.

69.     In equity and good conscience, Defendant should not be permitted to retain these funds. The money belongs to Plaintiffs and the class members, and Defendant is obligated to return it.

## Count 4: Violation of California Unfair Competition Law

### Cal. Bus. Code § 17200, *et seq.*

### (On Behalf of Plaintiff Chang, Plaintiffs Gill, and the California Subclass)

70.     Plaintiffs and members of the Subclass incorporate the above allegations as if fully set forth herein.

71.     Defendant engaged in unlawful, unfair, and fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* which prohibits unlawful, unfair, or fraudulent business acts or practices.

72.     Plaintiffs and the class members lack an adequate remedy at law, particularly as to forthcoming refunds from the federal government to Defendant.

73.     Defendant's business practices were unlawful, particularly because it collected money that was not ultimately owed by law, is illegally holding money that belongs to Plaintiffs,

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                14

deceptively mislabeled a surcharge, and continues to hold money for a surcharge that was ultimately found to be unlawful.

74. Defendant's business practices were unfair, particularly because it shifted the burden of potential compliance with the tariffs to Plaintiffs but retained all benefits for itself, including the refund of the tariff, even though that money was Plaintiffs' and is owed back to Plaintiffs. It is also continuing to retain funds that rightfully belong to Plaintiffs.

75. Defendant's retention of tariff overcharges despite their eligibility for a refund from the federal government is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm.

76. As a result of those unlawful and unfair business practices, Plaintiffs and the class members suffered an injury-in-fact and have lost money or property—specifically, the tariff overcharges they paid to Defendant.

77. The injuries to Plaintiffs and the class members greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

78. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

79. Therefore, Plaintiffs and the class members are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; an order declaring Defendant's conduct an unfair business practice; an injunction requiring Defendant to pay any refunded tariff overcharges back to Plaintiffs; and any other equitable relief the Court deems proper.

**Count 5: Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**

**815 Ill. Comp. Stat. § 505/1 *et seq.***

**(On Behalf of Plaintiffs Chaidez and Hernandez Reyes and the Illinois Subclass)**

80. Plaintiffs and members of the Subclass incorporate the above allegations as if fully set forth herein.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    15

81.     Plaintiffs, the members of the Illinois Subclass, and Defendant are "persons" within the meaning of 815 Ill. Comp. Stat. § 505/1(c).

82.     At all times mentioned herein, Defendant was engaged in "trade" or "commerce" in Illinois as defined by 815 Ill. Comp. Stat. § 505/1(f) by engaging in the offering and sale of things of value in Illinois.

83.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") provides that "[u]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practices described in . . . the 'Uniform Deceptive Trade Practices Act' . . . in the conduct of any trade or commerce are . . . unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. § 505/2.

84.     Plaintiffs and the Illinois Subclass Members purchased consumer goods marketed and sold by Defendant.

85.     Defendant's conduct was unfair under ICFA.

86.     After the Supreme Court held that the IEEPA tariffs lacked statutory authorization, Defendant became entitled or positioned to seek refunds, reliquidation, or other recovery of the IEEPA duties it had paid or deposited on its imported products. Defendant nevertheless has not established any mechanism to return to consumers the tariff surcharges it passed on to them.

87.     Defendant's conduct is unfair because Defendant shifted the economic burden of the IEEPA tariffs to consumers, while retaining for itself the refund rights, credits, reliquidation, or proceeds corresponding to the same tariff costs. Plaintiffs do not allege that Defendant was required to predict the Supreme Court's ruling when the tariffs were first imposed; rather, the unfairness arises from Defendant's continued retention of tariff surcharges after the tariff costs became refundable or recoverable.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                16

88.     Defendant's conduct offends public policy because it permits the party that passed a government charge through to consumers to retain the benefit of a later refund of that same charge, while the consumers who bore the economic burden receive nothing.

89.     Defendant's conduct is oppressive and unscrupulous because Plaintiffs and the Illinois Subclass Members had no ability to negotiate the tariff surcharges or mechanism to obtain IEEPA tariff refunds from the government.

90.     Defendant's conduct caused substantial injury to consumers because Plaintiffs and the Illinois Subclass Members paid tariff surcharges in connection with tariffs that were unlawful, and Defendant's failure to return or credit those amounts deprives consumers of money corresponding to tariff costs that Defendant may recover or has recovered from the government.

91.     815 Ill. Comp. Stat. § 505/10a states that "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion, may award actual economic damages or any other relief which the court deems proper. . . [t]he court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party."

92.     In taking the actions set forth above, Defendant violated ICFA, including but not limited to 815 Ill. Comp. Stat. § 505/2, by engaging in unfair practices in connection with the sale of consumer products to Plaintiffs and the Illinois Subclass Members.

93.     As a proximate result of Defendant's violations of ICFA, Plaintiffs and the Illinois Subclass Members suffered actual economic damages, including the tariff surcharges they paid to Defendant and the amount of any tariff refund, credit, reliquidation, or other recovery Defendant received or is entitled to receive in connection with the IEEPA tariffs.

94.     There is no benefit to consumers from Defendant's conduct. The only party who benefits is Defendant, who stands to enjoy windfall profits as a result of its conduct.

95.     Therefore, Defendant has violated ICFA by engaging in the unfair acts or practices prohibited by 815 Ill. Comp. Stat. §§ 505/2, 510/2.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    17

96.    Plaintiffs and the Illinois Subclass Members are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees and litigation costs, and any other relief that may be appropriate.

## PRAYER FOR RELIEF

97.    Plaintiffs and the class members demand a jury trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representatives, and appointing their counsel as class counsel;

B.    Declaring that Defendant is obligated to refund to Plaintiffs and the Class all tariff overcharges it collected from them in connection with IEEPA tariffs, and that Defendant is required to provide a full accounting of all tariff overcharges it collected from proposed Class members in connection with the IEEPA tariffs;

C.    Awarding damages, disgorgement, and restitution to Plaintiffs and the Class for all tariff overcharges they paid to Defendant and disgorging any refunds Defendant has or will receive from the federal government;

D.    Awarding attorneys' fees and costs;

E.    Awarding prejudgment and post-judgment interest; and

F.    Granting such further relief as the Court deems just and proper.

## JURY DEMAND

98.    Plaintiffs demand a trial by jury on all issues so triable.

Dated: July 21, 2026                    Respectfully submitted,


By: /s/ *Michelle Freed*

EBLEN FREED P.C.
Michelle Freed
1428 SE 20th Avenue
Portland, OR 97214
Telephone: (503) 548-6330
Facsimile: (503) 548-6332

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    18

Email: michelle@eblenfreed.com

MEYER WILSON WERNING CO., LPA
Matthew R. Wilson (*pro hac vice* to be filed)
Jared W. Connors (*pro hac vice* to be filed)
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
Email: mwilson@meyerwilson.com
        jconnors@meyerwilson.com

LEVIN LAW, P.A.
Brian Levin (*pro hac vice* to be filed)
2665 South Bayshore Drive, PH2b
Miami, FL 33133
Telephone: (305) 402-9050
Facsimile: (305) 676-4443
Email: brian@levinlawpa.com

LEVIN LAW, P.A.
Jacob Polin (*pro hac vice* to be filed)
344 20th Street
Oakland, CA 94612
Telephone: (305) 402-9050
Email: jacob@levinlawpa.com

*Counsel for Plaintiffs and the Proposed Class*

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES            19